1
2
3
4
5
6
7
8                            UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11      MICHAEL J. MITCHELL,                        No. 2:15-cv-1167 TLN AC P

12                      Plaintiff,

13          v.                                        FINDINGS AND RECOMMENDATIONS

14      SNOWDEN, et al.,

15                      Defendants.

16

17          I.      Introduction

18              Plaintiff is a state prisoner currently incarcerated at the California Health Care Facility

19      (CHCF) in Stockton, who brings suit under 42 U.S.C. § 1983.[1]  The case is before the court on

20      remand from the Ninth Circuit Court of Appeals, for reconsideration of equitable tolling in

21      relation to defendants' motion to dismiss (ECF No. 15).  The Court of Appeals ruled as follows:

22                  The district court properly concluded that the pendency of Mitchell's
                    prior federal action did not toll the statute of limitations. *See* Cal. Civ.
23                  Proc. Code §§ 335.1, 352.1(a) (two-year statute of limitations for
                    personal injury claims; two-year tolling period due to incarceration);
24                  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (forum state's
                    personal injury statute of limitations and tolling laws apply to § 1983
25                  actions); *Martell v. Antelope Valley Hosp. Med. Ctr.*, 79 Cal. Rptr.
                    2d 329, 334 (Ct. App. 1998) (a plaintiff's pursuit of successive
26                  claims in the same forum does not warrant application of equitable

27      _____

        [1]  The case is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
28      636(b)(1)(B) and Local Rule 302(c).

                                                     1

tolling). However, Mitchell also argued that the statute of limitations should be tolled because of his mental illness and multiple prison transfers. These factors should have been evaluated under California's equitable tolling doctrine. *See Fink v. Shedler*, 192 F.3d 911, 916 (9th Cir. 1999) (three-pronged test for equitable tolling in California). We vacate the judgment and remand for further proceedings.

ECF No. 43 at 2.

Pro bono counsel was appointed on remand, and plaintiff has been ably represented in litigation of the equitable tolling issue. Because the parties have presented material outside the pleadings, which the court has considered, defendants' motion to dismiss is treated as a motion for summary judgment. See Fed. R. Civ. P. 12(d), 56.

For the reasons set forth below, this court recommends that defendants' motion be granted.

## II.      Background

Plaintiff filed the operative complaint in pro se on May 5, 2015.[2] ECF No. 1. Upon screening pursuant to 28 U.S.C. § 1915A, the court found that the complaint states cognizable Eighth Amendment claims against defendant correctional officers Compton, Larios, Seaton, Snowden and Vance, based on their alleged failure to protect plaintiff from assault by other inmates on March 17, 2007. See ECF No. 5 at 3. This court agreed with the screening of plaintiff's virtually identical prior complaint in Mitchell v. Snowden et al., Case No. 2:08-cv-1658 JAM DAD P (ECF No. 12 at 3-10), which had been dismissed without prejudice for failure to prosecute on April 25, 2013. Id.[3] Like its predecessor, the instant complaint alleges that plaintiff's assailants fractured his nose, jaw, eye socket and tibula; that plaintiff lost two molars (one of which entered his lung); that plaintiff suffered brain damage and psychological trauma, including post-traumatic stress disorder; and that many of plaintiff's injuries are permanent.

[2] Unless otherwise noted, the court identifies plaintiff's filing dates according to the prison mailbox rule. Under that doctrine, a document is deemed served or filed on the date it was signed by the prisoner and given to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).
[3] Dismissal of the prior action without prejudice left plaintiff free to reassert his claims in a new action as of the prior action had never been filed. See Santa Clara v. Andrus, 572 F.2d 660, 665 (9th Cir. 1978).

1    Plaintiff also contends that his assailants were found guilty of assaulting him.

2         By order filed September 29, 2016, this court granted defendants' motion to dismiss

3    plaintiff's complaint as untimely and entered judgment accordingly.  See ECF Nos. 35-6.

4    Plaintiff appealed.  On November 1, 2017, the Court of Appeals vacated the judgment and

5    remanded the case for evaluation of plaintiff's "mental illness and multiple prison transfers . . .

6    under California's equitable tolling doctrine."  ECF No. 43 at 2 (Court of Appeals Memorandum

7    Decision, Case No. 16-16848).  The mandate issued on November 24, 2017.  ECF No. 46.

8         The undersigned held a status conference on January 17, 2018, then set a briefing

9    schedule.  ECF Nos. 48-9.  Plaintiff filed an opening brief and request for judicial notice, ECF

10   No. 51; defendants filed a response, ECF No. 54; and plaintiff filed a reply, ECF No. 58.

11   Briefing was completed on June 4, 2018.

12        III.    Legal Standards

13             A.    Standards Governing Motion

14        Defendants' motion to dismiss was originally brought pursuant to Federal Rule of Civil

15   Procedure 12(b)(6).  See ECF No. 15.  To survive a motion to dismiss under Rule 12(b)(6), a

16   complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

17   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic

18   Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court may consider facts established by

19   exhibits attached to the complaint, Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.

20   1987), and facts that may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

21   1385, 1388 (9th Cir. 1987), including matters of public record, Mack v. South Bay Beer

22   Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

23        However, if "matters outside the pleadings are presented to and not excluded by the court,

24   the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

25   "A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a

26   motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the

27   motion to dismiss submits materials outside the pleadings in support or opposition to the motion,

28   and if the district court relies on those materials."  Anderson v. Angelone, 86 F.3d 932, 934 (9th

Cir. 1996).

Equitable tolling is not appropriately resolved on a motion to dismiss except in those "unusual cases" where "some fact, evident from the face of the complaint, support[s] the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue." Cervantes v. City of San Diego, 5 F.3d 1273, 1276 (9th Cir. 1993) (citations omitted). Rather, as demonstrated in the instant case, "California's fact-intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage of litigation." Id.

In the instant case, this court directed the parties to submit "all the documentary evidence" upon which they rely on the question of equitable tolling. See ECF No. 60 at 8 (transcript of Jan. 17, 2018 status conference). The undersigned noted that "even though the issue first arose in the context of a motion to dismiss, I am going to be looking at extra record evidence and making findings of fact if necessary to present to Judge Nunley." Id.

Plaintiff has filed several exhibits and requests that the court take judicial notice of them as adjudicative facts. See ECF No. 51-1 et seq. Plaintiff's request is granted. All of plaintiff's exhibits are documents previously filed in this case. This court may take judicial notice of its own records and the records of other courts. See United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also Fed. R. Evid. 201(b) (court may take judicial notice of adjudicative facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

> B.     Standards Governing Limitations Period and Equitable Tolling

The statute of limitations runs from the accrual date of plaintiff's claim. "Although state law determines the length of the limitations period, 'federal law determines when a civil rights claim accrues.'" Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (quoting Morales v. City of Los Angeles, 214 F.3d 1151, 1153-54 (9th Cir. 2000). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

"[B]ecause there is no specified statute of limitations for an action under 42 U. S.C. § 1983, the federal courts look to the law of the state in which the cause of action arose and apply

the state law of limitations governing an analogous cause of action." Pouncil v. Tilton, 704 F.3d 568, 573 (9th Cir. 2012) (citation omitted). "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); see also Azer, 306 F.3d at 935-36.

In California, the statute of limitations for personal injury actions is two years. See Cal. Code Civ. Proc. § 335.1; Maldonado v. Harris, 370 F.3d 945, 954-55 (9th Cir. 2004). This limitations period is statutorily tolled for another two years for prisoners serving less than a life sentence, resulting in a total limitations period of four years. See Cal. Civ. Proc. Code § 352.1(a); Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000).

Additionally, in California, "the applicable statute of limitations must be tolled while a prisoner completes the mandatory [administrative] exhaustion process." Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005). Because administrative exhaustion is statutorily required of prisoner civil rights complaints under the Prison Litigation Reform Act (PLRA), see 42 U.S.C. § 1997e(a), this requirement provides a federal statutory basis to invoke the state's equitable tolling. See, e.g., Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001).

In addition, where justice demands, California courts may exercise their inherent power to equitably toll the limitations period.[4] "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. It is designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations – timely notice to the defendant of the plaintiff's claims – has been satisfied. Where applicable, the doctrine will suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." McDonald v. Antelope Valley Cmty. Coll. Dist., 45 Cal. 4th 88, 99 (2008) (citations and internal quotation marks omitted).

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of

---

[4] See infra, n. 11.

limitations: '(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith.'" Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999), as amended on denial of reh'g and reh'g en banc (Dec. 13, 1999), cert. denied, 529 U.S. 1117 (2000) (quoting Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988)); see also Addison v. State of California, 21 Cal. 3d 313, 319 (1978) ("[A]pplication of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff."). "California courts apply equitable tolling 'to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.'" Jones, 393 F.3d at 928 (quoting Lantzy v. Centex Homes 31 Cal. 4th 363, 370 (2003)). "Application of California's equitable tolling doctrine 'requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute.'" Jones at 928 (quoting Lantzy at 371).

Additionally, in California, equitable tolling is statutorily authorized for any period of time that a party is "lacking the legal capacity to make decisions," provided such disability existed "at the time the cause of action accrued." Cal. C. Civ. P. § 352(a) (2019). As previously worded, the statute accorded tolling for the period of time that a party was "insane." Cal. C. Civ. P. § 352 (2013). "The term 'insane' has been defined as a condition of mental derangement which renders the sufferer incapable of caring for his property or transacting business, or understanding the nature or effects of his acts." Hsu v. Mt. Zion Hospital, 259 Cal. App. 2d 562, 571 (Ct. App. 1968) (citations omitted). "[T]he basic question to be resolved . . . is whether the allegedly insane plaintiff is sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action. If he is so aware, then the statute will begin to run against him." Id. at 575.

IV.    Facts

The following facts are undisputed and supported by the record. Plaintiff's exhibits are limited to matters filed in this court and reflected on the docket. For clarity, these exhibits are

referenced below by their docket numbers (e.g., "ECF No. #"), rather than the designations used by plaintiff. Plaintiff has submitted no independent assessment of his mental impairment or official record of his numerous prison transfers. Defendant also relies only on the documents previously filed in this case. Although the undersigned invited the parties to request an evidentiary hearing if they thought it would be helpful, neither side did so.

A.     Mitchell I:  2008 - 2010

On July 8, 2008, while still at CSP-SAC, plaintiff filed his first federal action presenting the matters at issue in this case. See Mitchell v. Snowden et al., Case No. 2:08-cv-1658 JAM DAD P ("Mitchell I"). The complaint alleged, inter alia, that plaintiff continued to suffer a jaw fracture and significant pain despite two surgeries (id. at 5),[5] and that plaintiff received CDCR mental health services at the "Enhanced Outpatient" (EOP) level of care (id. at 3).

The complaint was screened pursuant to 28 U.S.C. § 1915A, and plaintiff was granted leave to amend on June 16, 2009. ECF No. 12. After plaintiff failed to file an amended complaint, two defendants were dismissed and service was ordered on other defendants on January 15, 2010. ECF No. 13. Plaintiff promptly returned the information necessary for the U.S. Marshal to serve process on defendants. ECF No. 14. On the same date, plaintiff filed a notice of change of address to California State Prison Los Angeles County (CSP-LAC), effective January 13, 2010. ECF No. 15.

Defendant Compton filed a motion to dismiss on June 1, 2010, on administrative exhaustion grounds. ECF No. 20. The other defendants answered the complaint. ECF No. 19.) Plaintiff requested and obtained several extensions of time within which to respond to defendant Compton's motion to dismiss.[6] The first request noted plaintiff's efforts to obtain counsel and that he was still "awaiting the reply from approx. ten (10) different attorneys." ECF No. 21. The second request, made on the same grounds, was supported by exhibits demonstrating plaintiff's efforts to obtain counsel. ECF No. 28. The third request stated that plaintiff had been unable to

---

[5] Parenthetical citations to the court's Electronic Case File (ECF) reference plaintiff's 2008 case (Mitchell I), while ECF citations without parentheses reference the instant case, Mitchell II.
[6] See ECF Nos. 21, 24, 28-9, 31-4, 36-7, 39-41.

obtain counsel, that he had undergone cataract surgery on August 10, 2010, that his vision

remained impaired in both eyes, and that he needed additional time to obtain corrective lenses.

ECF No. 31.

Plaintiff's fourth, fifth and sixth requests for extended time to respond to defendant

Compton's motion to dismiss were premised on continuing delays in obtaining corrective lenses

and plaintiff's limited access to his legal materials after his placement in Ad Seg on October 13,

2010. ECF Nos. 33, 36, 37. Plaintiff explained that efforts to obtain his legal materials, e.g. by

submitting administrative appeals, had been futile. Id.

Plaintiff's sixth extension request, which was prepared November 18, 2010 and docketed

November 29, 2010, was his first request for extended time based on his mental illness:

> This is taking its toll on me your Honor. I am a mentally ill
> prisoner/patient within [CDCR] at an enhanced level, due to a serious
> (1-21-2005) suicide attempt and subsequent suicidal ideations. [I
> am] known by the CDCR to suffer severe/chronic physical pain
> caused by injuries sustained in the matter before the court. I am again
> considering suicide.

ECF No. 37 at 3.

On December 9, 2010, plaintiff dictated an affidavit to a therapist, who typed it; on

December 14, 2010, plaintiff signed the affidavit under penalty of perjury. ECF No. 40. That

affidavit provided in pertinent part:

> Because the above-named person is on "suicide watch" due to an 11-
> 19-2010 suicide attempt, this letter is being dictated to you. Mr.
> Mitchell is not allowed any materials related to his meeting his court
> deadline/response to Defendant Compton's June 1, 2010 motion to
> dismiss.
>
> Mr. Mitchell has been referred to the Department of Mental Health
> and is awaiting acceptance to the program. Once placed, Mr.
> Mitchell will have access to his legal materials. Mr. Mitchell
> requests an extension of time to address this issue.

Id. at 1.

B.    Mitchell I:  2011

Plaintiff was granted until February 21, 2011 to file and serve his response to defendant

Compton's motion to dismiss; the order had to be re-served on plaintiff at his next place of

incarceration, the California Medical Facility (CMF). ECF No. 41. Prior to receipt of that order, plaintiff filed a seventh request for extended time, explaining that, due to his suicide attempt on November 19, 2010, he continued to be denied access to his legal materials and was allowed only limited access to writing materials; plaintiff stated that he was permitted to write to the court on this occasion only because he threatened a hunger strike. ECF No. 42. Plaintiff explained the reasons for his suicide attempt as follows:

> (P's)[7] attempted suicide was real and (P) was rendered unconscious when discovered (hanging from cell door). This attempt[ed] suicide was due to (P's) ongoing severe pain mandible (jaw) fracture and the denial/destruction of his legal property. On the day of his suicide attempt (P) had finally been allowed to access his legal property. At which time (P) discovered that a significant portion of his Legal Mat. related to this matter was soaking wet and/or molded in a large plastic trash bag.

Id. at 2.

Plaintiff also stated that he had been informed by his psychiatrist he might be released from the Department of Mental Health (at CMF) within the next two weeks; that his legal materials had been forwarded to CSP-LAC; and that he "assure[d] the court that the[re] will be no further attempts to take his life or self harm." ECF No. 42 at 5. Plaintiff was transferred to CSP-LAC in February 2011. ECF No. 45.

On March 7, 2011, notwithstanding plaintiff's failure to file an opposition to the pending motion to dismiss, the court issued findings and recommendations which were adopted May 2, 2011, resulting in the denial of the motion. ECF Nos. 47, 52. Plaintiff's further requests for extended time (ECF Nos. 42, 48-9) were denied as moot or unnecessary (ECF Nos. 44, 51). A Discovery and Scheduling Order was issued on May 27, 2011. ECF No. 56.

On August 30, 2011, defendants filed an ex parte motion to modify the scheduling order due to plaintiff's deteriorating mental health. Defendants explained:[8]

> Mitchell's psychiatric condition [has] deteriorated, and on August 4, 2011, he was transferred from [CSP-LAC] to Pelican Bay State

---

[7] Plaintiff uses "(P)" as shorthand for "plaintiff."

[8] This description was supported by the declarations of T. McCarthy, Ph.D., PBSP/MHCB Administrator, and G. Gomez, Deputy Attorney General.

9

Prison (PBSP) and placed in PBSP's Mental Health Crisis Bed (MHCB) unit so that he could receive acute inpatient crisis care. Because of his placement in an inpatient facility and his psychiatric condition, Mitchell has not had access to his personal and legal property since arriving at the PBSP MHCB unit. Mitchell cannot leave the MHCB unit, which is located in the Correctional Treatment Center inpatient medical facility, until he is discharged.

Defense counsel became aware of Mitchell's transfer to PBSP, and placement in the MHCB on August 11, 2011. Defense counsel noticed a deposition by video for Mitchell to occur on August 29, 2011, should his psychiatric condition improve. Defense counsel contacted the PBSP litigation office to confirm the deposition on August 26, 2011, and was told that Mitchell's psychiatric condition made him unable to review his legal property or be deposed by video on August 29, 2011, because he remained in the MHCB unit. Mitchell is awaiting transfer to an inpatient mental health facility operated by the Department of Mental Health, and will remain in the MHCB unit until his transfer is completed. Defendants will update the Court once Mitchell is transferred to the inpatient facility, and he is able to review his property and testify in his deposition.

ECF No. 60 at 2) (internal citations omitted).[9] The court vacated the previously-ordered litigation deadlines, and directed defense counsel to file monthly status reports. ECF No. 61.

On October 3, 2011, defendants reported that plaintiff was improving, that he had been placed in PBSP's EOP, might receive his legal and personal property within two weeks, and could then participate in a video deposition. ECF No. 63.[10] The court issued new deadlines for discovery and dispositive motions (ECF No. 64), and denied as unnecessary plaintiff's subsequent request for extended time (ECF Nos. 65, 66).

On November 10, 2011, plaintiff requested that the discovery and motion deadlines be

---

[9] Plaintiff independently informed the court that he had been transferred to PBSP, and that he remained on suicide watch, had severe pain in his jaw, and was "forced to take very powerful mind altering psychiatric medications and some medical (narcotics)." ECF No. 62 at 4.

[10] The attached declaration of W. Barlow, PBSP Classification and Parole Representative, stated that plaintiff had been transferred to PBSP on September 28, 2011, from "a Department of Mental Health (DMH) inpatient facility at the California Medical Facility." ECF No. 63-1 at 1; cf. ECF No. 60 at 2 (stating that plaintiff was transferred from CSP-LAC to PBSP on August 4, 2011); attached exhibits do not contradict or clarify this matter.) The attached declaration of M. Price, Psy.D., PBSP Senior Psychologist (ECF No. 63-2 at 2), noted as follows:

Mitchell has a history of mental illness, and has had multiple Mental Health Crisis Bed Admissions and Department of Mental Health admissions in the past. He may require inpatient care in the future should his mental health condition deteriorate.

10

extended because he still had not received his legal or personal property as of November 3, 2011. ECF No. 67. The court directed defendants to file a response. ECF No. 68. Defendants did not object to a limited extension of time to conduct discovery, informing the court that plaintiff had received his legal and personal property on November 3, 2011, and that defendants had taken plaintiff's video deposition on December 5, 2011. ECF No. 70. The court extended the discovery deadline to March 30, 2012, and the motion deadline to June 1, 2012. ECF No. 71.

C.      Mitchell I:  2012

On April 6, 2012, plaintiff sought an extension of the discovery deadline due to circumstances including his "significant mental health/medical issues [] that impede his ability to learn and/or concentrate." ECF No. 77 at 1. One of plaintiff's exhibits was a "Renewal of Involuntary Medication Notice" indicating that medical staff had previously sought to extend authorization of involuntary psychiatric medications, on the ground that plaintiff would be a danger to himself without such medications. Id. at 11. Plaintiff's request for extended time was denied. ECF No. 86.

Plaintiff was transferred from PBSP on May 29, 2012. ECF No. 80. Although the destination institution was MCSP, with a planned one-day "layover" at Deuel Vocational Institution (DVI), plaintiff spent more than a week at DVI due to a medical emergency and was then transferred to MCSP on June 7, 2012. ECF Nos. 80, 85. Once at MCSP, plaintiff informed the court of his mental health status and that he was still waiting to receive his property and access to the law library:

> (P) continue to await the [undisclosed] surgery. And it may be done at a nearby hospital. However because of (P's) severe mental illness his ultimate destination is an institution that could accommodate his level of care requirements. To include court order involuntary medication (forced medicated) and Enhanced Outpatient Program (EOP) which (P) is now endorsed for R.J. Donovan S.P. near San Diego. But it is possible that I could be reendorsed to remain here by my mental health treatment. (P) is on a drug that is helping him and has fewer side affects. (P) apologize for all of the changes of locations. And thank the court for tolerating (Ps) lack of expertise. Again the psychiatric medication really helps with my writing. This is the best of five drafts of this document sir. It will get better. I promise.

ECF No. 85 at 2.

Defendants filed a motion for summary judgment on June 8, 2012.  ECF Nos. 81-2.

Plaintiff filed a "notice of current status," prepared June 18, 2012, in which he stated that he was

still waiting for his personal and legal property.  ECF No. 87.  Plaintiff noted that he had "kept his

promise and commitment to the court and to himself to have no further suicide attempts since 11-

19-10," and had "worked diligently in his effort to achieve/maintain psychological stability so not

to require unnecessary hospitalization and/or circumstances that could interfere with the

expeditious, economically efficient and Honorable Adjudication of this matter."  Id. at 2.

Plaintiff noted that his "recent transfer has been a laudable CDCR progression."  Id.  Plaintiff was

granted fourteen additional days to respond to defendants' motion for summary judgment.  ECF

No. 88.

On July 26, 2012, plaintiff again requested extended time to respond to defendants'

motion for summary judgment.  ECF No. 89.  Plaintiff explained that, although he received his

property at MCSP on July 9, 2012, on July 23, 2012 he was ordered to pack up his property for

transfer to another institution.  ECF No. 89.  The court granted plaintiff additional time.  ECF No.

90.  On July 31, 2012, plaintiff prepared another request for extended time, informing the court

that he was then at the California Institution for Men (CIM), in transit to R.J. Donovan State

Prison (CSP-Donovan), and still without his property.  ECF No. 91.  Plaintiff informed the court

that he arrived at CSP-Donovan on August 2, 2012, but had been without his property since May

30, 2012, (but see ECF No. 95 at 1, in which plaintiff acknowledges he had access to his legal

property from July 15 to July 27, 2012), and did not expect to receive his property until he

appeared before the Institutional Classification Committee (ICC) approximately two weeks later.

ECF No. 92.  The court again granted plaintiff additional time to respond to defendants' motion

for summary judgment.  ECF No. 93.

Plaintiff later informed the court that he had received his property on August 13, 2012

(ECF No. 94), and again sought additional time to respond to defendants' motion (ECF No. 95),

which the court granted (ECF No. 96).

On September 23, 2012, plaintiff prepared a document entitled "Plaintiff's Notice of

Inability to File Opposition to Defense Motion for Summary Judgment,' which was docketed on

September 28, 2012, stating that plaintiff had not received a copy of the court's last order. ECF No. 97. Plaintiff further stated that if he did not receive "another 'active' order," he would "send in his opposition as is by Fri. 9-28-12." Id. at 2.

On October 30, 2012, the magistrate judge recommended the dismissal of Mitchell I due to plaintiff's failure to file an opposition to defendants' motion for summary judgment and failure to comply with court orders. ECF No. 98. The court noted in part: "In a document dated September 23, 2012, plaintiff indicated that he would be submitting his opposition to defendants' summary judgment motion on September 28, 2012. (See Dkt. No. 92 at p. 2.) To date, the court has not received plaintiff's response to the summary judgment motion which is now past due." ECF No. 98 at 1.

Plaintiff filed objections to the findings and recommendations on November 16, 2012 (ECF No. 100), and a request for status with exhibits (ECF No. 101, 102). The court vacated the findings and recommendations on the following grounds:

> [P]laintiff represents to the court that he in fact submitted his opposition to defendants' motion for summary judgment on October 11, 2012, to the appropriate prison official for delivery but that it never left in the prison's outgoing mail. Plaintiff has also filed with this court a written acknowledgment by Correctional Officer Soriano that Soriano indeed received plaintiff's legal mail and placed it "in the mail bag to be mailed." (Objections (Docket No. 100), at 7.) With his objections plaintiff has also submitted a log showing that some of his other legal mail to this court left the prison in the weeks before and after October 11, 2012, but that no mail addressed by him to this court left the prison reasonably near October 11, 2012. (See Documentation in Support of Objections (Docket No. 102), at 4-5.) The defendants have not responded to plaintiff's explanation set forth in his objections.
>
> The court finds that plaintiff has made a credible showing that he attempted to file a timely opposition to the pending motion for summary judgment on October 11, 2012. Accordingly, the October 30, 2012 findings and recommendations recommending that this action be dismissed will be vacated. Given the circumstances as represented by plaintiff, plaintiff should have a copy of his opposition to the summary judgment on hand that he can forward to the court. Therefore, this final extension of time to file his opposition – the last of many granted plaintiff in this case – need not be long. Plaintiff will be granted fourteen days from his receipt of this order in which to file his opposition to the defendants' pending motion for summary judgment. The court will not grant another extension of time for this purpose absent yet another showing of extraordinary circumstances.

13

ECF No. 103 at 1-2.

D.   Mitchell I:  2013 - 2015

On February 15, 2013, plaintiff again requested extended time, stating that he assumed the court would give him an additional thirty days, not fourteen days.  ECF No. 104.  Plaintiff explained, with supporting documentation, that he had been unable to copy his opposition before attempting to mail it on October 11, 2012.  Plaintiff asked the court to "[p]lease understand that (P) really do[es] have a severe mental illness and that (Ps) mental illness really do[es] impact his thinking and actions."  Id. at 4.  The court found this statement insufficient to demonstrate extraordinary circumstances, denied plaintiff's extension request, and again recommended that the action be dismissed.  ECF No. 105

The district judge adopted the findings and recommendations by order filed April 25, 2013, and judgment was entered accordingly.  ECF Nos. 111, 112.  The district judge denied plaintiff's motion for reconsideration.  ECF No. 125.  The Court of Appeals affirmed the judgment of the district court by memorandum decision filed December 9, 2014.  ECF No. 126.

E.   Mitchell II:  Commenced 2015

Plaintiff filed the original complaint in the instant action ("Mitchell II") on May 5, 2015 (docketed May 29, 2015).  See ECF No. 1.

V.   Analysis

A.   Accrual of Plaintiff's Claims

The parties do not dispute that plaintiff's federal claims accrued on March 17, 2007, when plaintiff was attacked by three other inmates at California State Prison Sacramento (CSP-SAC), due to the alleged failure of defendant correctional officials to protect plaintiff.  Because plaintiff knew of the injuries that form the basis of this action on March 17, 2007, his claims accrued on that date.  See TwoRivers, 174 F.3d at 991.

B.   Statutory Limitations Period

Defendants acknowledge that plaintiff exhausted his relevant administrative appeal on November 17, 2007, and that the statute of limitations was tolled through that date.  ECF No. 54 at 16; see Brown, 422 F.3d at 943.  The limitations period accordingly commenced the following

14

day, on November 18, 2007.  See Fed. R. Civ. P. 6(a).

Under California law, plaintiff then had a total of four years, or until November 18, 2011, to bring his federal action.  See Cal. Code Civ. Proc. § 335.1 (two-year statute of limitations for personal injury actions); Cal. Civ. Proc. Code § 352.1(a) (two-year tolling due to disability of imprisonment for prisoners serving less than a life term).  However, plaintiff commenced this action more than three years later on May 5, 2015.  Accordingly, absent equitable tolling, the instant action is time-barred.

C.      Equitable Tolling

The Court of Appeals has directed this court to evaluate plaintiff's "mental illness and multiple prison transfers . . . under California's equitable tolling doctrine.  See Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999) (three-pronged test for equitable tolling in California)."  ECF No. 43 at 2.  In light of this directive, the undersigned will assume that plaintiff is entitled to equitable tolling if he satisfies Fink's three-part test as to any periods during which mental illness and prison transfers prevented timely filing.[11]

---

[11] The undersigned has previously noted that the three-part test cited in Fink is only applied by California courts in circumstances involving a plaintiff's attempt to seek relief in another forum or to otherwise resolve the dispute without litigation.  See ECF No. 23 at 6-8.  As the California Supreme Court has explained, the state courts "have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." Addison v. California, 21 Cal. 3d 313, 317 (1978).  The California cases that apply the equitable factors recited in Fink do so in the context of a plaintiff's prior pursuit of remedies in another forum.  See, e.g., Addison, supra, (federal action preceding state court action); Nichols v. Canoga Indus., 83 Cal. App. 3d 956 (1978) (same); Elkins v. Derby, 12 Cal.3d 410 (1974) (workers compensation administrative action preceding state court action); Jones v. Tracy School Dist., 27 Cal. 3d 99 (1980) (U.S. Department of Labor administrative action preceding state court action).  This contrasts sharply with the federal courts' equitable tolling doctrine in the habeas corpus context, under which any "exceptional circumstances" beyond a prisoner's control, frequently including mental illness and deprivation of legal materials, can support tolling if the applicable equitable standard is satisfied.  See Holland v. Florida, 560 U.S. 631 (2010); Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010).  The undersigned remains unconvinced that California's equitable tolling doctrine applies to this case in the first instance, because plaintiff did not file the instant lawsuit after pursuing alternative remedies in a different forum.  Nonetheless, in light of this court's obligation to follow the mandate of the Court of Appeals, the equitable factors recited in Fink will be applied to plaintiff's assertion that his untimeliness was caused by mental illness and prison transfers that deprived him of his legal property.

1.     Circumstances Proffered in Supporting of Tolling

a.     Prior Federal Litigation

The Court of Appeals affirmed this court's prior conclusion "that the pendency of Mitchell's prior federal action did not toll the statute of limitations." ECF No. 43 at 2 (citing, inter alia, Martell v. Antelope Valley Hosp. Med. Ctr., 67 Cal. App. 4th 978, 985 (1998) (equitable tolling does not apply to successive claims pursued in the same forum)). See also ECF No. 23 at 6-10 (setting forth this court's prior analysis of the matter).[12] Plaintiff's current efforts to obtain tolling in Mitchell II based solely on the pendency of Mitchell I are therefore unavailing.[13] Mitchell I cannot support equitable tolling of the limitations period for Mitchell II, as a matter of law and pursuant to the law of the case doctrine. See Richardson v. United States, 841 F.2d 993, 996 (9th Cir.), amended, 860 F.2d 357 (9th Cir.1988) (under law of the case doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.").

b.     Multiple Prison Transfers

Plaintiff was repeatedly deprived of his legal property during the period October 13, 2010 (when plaintiff was initially placed in Ad Seg at CSP-LAC without his legal property) through August 13, 2012 (when plaintiff received his legal property after being settled at CSP-Donovan). This period encompasses plaintiff's multiple prison transfers, including his transfers in February 2011 from CSP-LAC to CMF and then back to CSP-LAC; in August 2011 to PBSP; in late May-early June 2012 to MCSP, via DVI; then in late July-early August 2012 to CSP-Donovan, via CIM. Plaintiff's transfer and classification history establishes a pattern of disrupted access to necessary legal materials that made it unreasonably difficult for him to pursue litigation during

_____

[12]  Accord, Jamison v. Garza, 2017 WL 3226472, at *4-5, 2017 U.S. Dist. LEXIS 120021, at *11-2 (E.D. Cal. July 31, 2017) (Case No. 1:16-cv-0318 BAM PC) (and cases cited therein); Porter v. Los Angeles County, 2016 WL 8732091, at *5, 2016 U.S. Dist. LEXIS 155161, at *11-2 (C.D. Cal. Aug. 9, 2016) (and cases cited therein), report and recommendation adopted, 2016 WL 8738109 (C.D. Cal. Nov. 4, 2016).
[13]  Plaintiff's reliance on Donoghue v. Orange County, 848 F.2d 926, 930-31 (9th Cir. 1987) is misplaced. See ECF No. 51 at 18. Donoghue authorized equitable tolling on similar claims brought in different forums; not, as in the instant case, on successive claims brought in the same forum.

1    this period. Accordingly, the court finds that plaintiff was effectively denied access to his legal

2    property from October 13, 2010 through August 13, 2012, a period of 670 days, due to multiple

3    prison transfers. Pursuant to the Ninth Circuit's mandate, tolling may be available for this period

4    if plaintiff satisfies the Fink criteria.

5                                    c.       Mental Illness

6            Plaintiff first sought this court's accommodation for his mental illness in late 2010, when

7    he sought an extension of time in Mitchell I. ECF Nos. 37 (request filed on November 29, 2010),

8    40 (supporting affidavit filed on December 14, 2010). Both filings informed the court of

9    plaintiff's attempted suicide on November 19, 2010 at CSP-LAC. Plaintiff was transferred to

10   CMF to receive specialized mental health care, then transferred back to CSP-LAC. On August

11   30, 2011, defendants informed the court that plaintiff's psychiatric condition had again

12   deteriorated and that he had been transferred to PBSP's Mental Health Crisis Bed (MHCB) unit

13   on August 4, 2011. ECF No. 60. On October 3, 2011, defendants reported that plaintiff's mental

14   health was improving (ECF No. 63) and, on December 5, 2011, plaintiff participated in his video

15   deposition (see ECF No. 70). However, plaintiff was not transferred from PBSP until May 29,

16   2012 and, on April 6, 2012, he again sought extended time based on his deteriorated mental

17   condition. ECF No. 77. On June 18, 2012, plaintiff filed a status report informing the court that

18   his mental health had improved. ECF No. 87. Plaintiff's subsequent filings in Mitchell I did not

19   seek accommodations based on a deterioration in his mental health, but asked only that the court

20   consider plaintiff's chronic mental illness when considering whether to grant him additional time

21   to respond to defendants' motion for summary judgment.

22           Considering these facts under the standards set forth in Cal. Code Civ. Proc. § 352(a), the

23   court finds that plaintiff was unable to care for himself or his affairs, and lacked the capacity to

24   pursue this action, due to his mental illness from approximately November 19, 2010 (the date of

25   plaintiff's suicide attempt) until June 18, 2012 (when plaintiff informed the court that his mental

26   health had improved). However, plaintiff has not demonstrated that he lacked the legal capacity

27   to make decisions *at the time the cause of action accrued*, as required for tolling under Cal. Code

28   Civ. Proc. § 352(a). This consideration does not affect the ultimate timeliness determination,

however, because the period of plaintiff's mental incapacity (November 19, 2010 to June 18, 2012) is subsumed within the longer period during which plaintiff was deprived of his legal materials (October 13, 2010 through August 13, 2012). The latter basis for tolling is not subject to the statutory requirement that the impediment existed at the time of accrual.

Accordingly, whether or not plaintiff's mental illness constitutes a separate ground for tolling under California law, this court must examine whether plaintiff is entitled to tolling for the period October 13, 2010 through August 13, 2012.

### 2. Application of *Fink* Factors

In California, a statute of limitations may be equitably tolled if (1) defendants received timely notice of plaintiff's claims; (2) defendants will not be prejudiced if required to defend plaintiff's claims; and (3) plaintiff's conduct in pursuing the claim has been "reasonable and in good faith." Fink, 192 F.3d at 916.

#### a. Notice to Defendants

"The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." Collier v. City of Pasadena, 142 Cal. App. 3d 917, 924 (1983).[14]

Defendants concede they received timely notice of plaintiff's claims in the instant action because initially presented in Mitchell I, which was timely filed within the statutory period. See ECF No. 54 at 18. This concession satisfies the first factor identified in Fink to support equitable tolling.

#### b. Prejudice to Defendants

Plaintiff contends that defendants would not be prejudiced if required to proceed in Mitchell II because "the facts are the same and the defendants are virtually the same" as presented

---

[14] This phrasing of the standard supports the court's understanding that these criteria are to be applied in in circumstances where plaintiff filed his lawsuit outside the limitations period because he was first pursuing other avenues of relief.

in Mitchell I.  ECF No. 58 at 7.  His position is supported by California law:

> The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second.  Yet the two 'causes of action' need not be absolutely identical. The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim.

Collier, 142 Cal. App. 3d at 925.

Defendants contend that they would be prejudiced in gathering evidence to defend against plaintiff's claims if required to proceed in the instant action.  While conceding that the claims and parties are virtually identical in Mitchell I and Mitchell II, defendants emphasize that the events at issue occurred more than twelve years ago, that memories have grown stale and that material witnesses, including approximately twenty inmate witnesses to the incident,[15] may no longer be available.  See ECF No. 54 at 18-9.  Defendants rely on the following reasoning by the Ninth Circuit:

> Fairness to the defendant requires that a case be brought when memories have not been affected by time, when all pertinent witnesses can still be called, and when physical evidence has not been destroyed or dispersed. In addition to these evidentiary concerns, the public has an interest in avoiding the cultivation of stale grievances and grudges. Statutes of limitations are not legalistic gimmicks but embody the experience of Anglo-American law that it is sound public policy to set a specific time within which a given legal action may be brought.

Jones v. Blanas, 393 F.3d at 928.

The court appreciates that the passage of time always prejudices the defense of a lawsuit to some degree; the question is to what degree, within what timeframe.  Here it is significant that defendants prepared and filed a detailed motion for summary judgment in Mitchell I that included thirty-four pages of undisputed facts and eight declarations.  See Mitchell I (ECF No. 81). Defendants argue that the motion was submitted more than six years ago and remained unresolved due to plaintiff's failure to prosecute, leaving defendants unsure whether any claims

---

[15]  See the operative complaint in Mitchell II, ECF No. 1 at 5:4-5 ("approx. 20 other inmate/ patients were present").

19

would have survived summary judgment and therefore precluding any trial preparation. Nevertheless, defendants' preparation and memorialization of their motion for summary judgment in Mitchell I enables them to timely identify the sources of evidence, including all inmate witnesses, needed for their defense in the instant action.

Focusing on the 670 days for which tolling might be appropriate on grounds of plaintiff's mental illness and pattern of prison transfers, although it is a close call, the court finds on balance that defendants are "adequately protected from stale claims and deteriorated evidence." Collier, 142 Cal. App. 3d at 925. Accordingly, at least as to the initial tolling period of 670 days, court finds that the second factor under Fink weighs slightly in plaintiff's favor.

### c. Plaintiff's Conduct

The third and final requirement for equitable tolling under California law requires that "'plaintiff's conduct must have been reasonable and in good faith.'" Fink, 192F.3d at 916 (quoting Bacon, 843 F.2d at 374). "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases," Collier, 142 Cal. App. 3d at 926, as acknowledged by the California Supreme Court, see McDonald, supra, 45 Cal. 4th at 102 n.2, and several California Courts of Appeal, see e.g. Hopkins v. Kedzierski, 225 Cal. App. 4th 736, 747 (2014). Nevertheless, "[w]hile the case law is not entirely clear, it appears that the weight of authority supports [the] conclusion that whether a plaintiff has demonstrated the elements of equitable tolling presents a question of fact." Hopkins, 225 Cal. App. 4th at 755 (collecting cases).

Despite plaintiff's limited access to his legal materials and diminished mental capacity during the period October 13, 2010 through August 13, 2012, plaintiff continued to communicate with the court to ensure that his case remained open. Plaintiff filed six changes of addresses, twelve requests for extended time, two "offers of settlement" and a request for appointment of counsel. The court finds these efforts demonstrate that plaintiff acted as reasonably as he could during this period and therefore in good faith, thus satisfying the third and final factor supporting equitable tolling under Fink.

////

20

1             3.          Extension of Limitations Period Due to Equitable Tolling

2         For the foregoing reasons, the court finds that equitable tolling is warranted under <u>Fink</u> for

3 the period October 13, 2010 through August 13, 2012.  "[T]he effect of equitable tolling is that

4 the limitations period *stops running* during the tolling event, and begins to run again only when

5 the tolling event has concluded.  As a consequence, the tolled interval, no matter when it took

6 place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the

7 entire length of time during which the tolling event previously occurred."  <u>Lantzy</u>, 31 Cal.4th at

8 370-371 (fn. omitted) (original emphasis).

9         Application of equitable tolling from October 13, 2010 through August 13, 2012 extends

10 the limitations period for 670 days, thus extending the filing deadline from November 18, 2011 to

11 September 18, 2013.

12             4.          No Further Equitable Tolling Is Warranted

13         Plaintiff did not commence the instant action until May 5, 2015, a year-and-a-half after

14 the deadline as extended by the above equitable tolling analysis.  Accordingly, the instant action

15 is timely only if equitable tolling further extends beyond September 18, 2013 and through at least

16 May 5, 2015.

17         Plaintiff's evidence of mental impairment and chronic deprivation of legal materials due

18 to prison transfers, which has been outlined above, does not extend into this period.  While

19 plaintiff periodically reminded the court during this time of his ongoing mental illness, he has not

20 submitted any evidence that supports a conclusion he was unable to initiate a new lawsuit

21 between September 18, 2013 and May 5, 2015 due to either mental illness or prison transfers.  To

22 the contrary, the record demonstrates that plaintiff was capable of litigating during this period and

23 chose to pursue post-judgment relief in <u>Mitchell I</u> – which does not support equitable tolling, <u>see</u>

24 <u>Martell</u>, 67 Cal. App. 4th at 985 – rather than refile his claims in a new action.

25         Moreover, the <u>Fink</u> factors are not satisfied as to the period of September 18, 2013 to May

26 5, 2015.  While defendants remained on notice of plaintiff's claims, satisfying the first prong, the

27 prejudice to their ability to defend has necessarily increased as time continues to pass.  On the one

28 hand, as discussed above, defendants had made a record in <u>Mitchell I</u> of the evidence supporting

their position and plaintiff's. This consideration weighs against a finding of prejudice for the reasons previously explained. On the other hand, defendants' access to the previously-identified evidence cannot be assumed to have persisted indefinitely, and the weight of this factor shifts to defendants over time. However, defendants have not specifically identified evidence that become unavailable during this period, and the court therefore hesitates to find that the prejudice factor shifts in their favor as to the period of September 18, 2013 to May 5, 2015. However, even if this factor continued to lie in plaintiff's favor, he would not be entitled to further equitable tolling unless he had acted reasonably in pursuing his claims during the relevant period. Plaintiff cannot satisfy his burden as to this dispositive factor.

When the extended limitations period expired (absent further tolling) on September 19, 2013, judgment had already been entered against plaintiff in <u>Mitchell I</u>. That dismissal was without prejudice, and there was therefore no bar to plaintiff promptly re-filing his claims in a new complaint if he wished to pursue them during the five months then remaining on the limitations "clock." <u>See</u> <u>Santa Clara v. Andrus</u>, 572 F.2d 660, 665 (9th[h] Cir. 1978) (dismissal without prejudice permits filing of a new action). Re-filing previously drafted claims requires no research, investigation, or access to materials other than the prior complaint (or memory of its contents). Rather than following this course, however, plaintiff filed both a motion to alter or amend the judgement and a notice of appeal. <u>Mitchell I</u>, ECF Nos. 115, 118. The motion to alter or amend the judgment was denied on December 10, 2013. ECF No. 125. The district court's judgment was affirmed by the Court of Appeals on December 9, 2014. <u>Mitchell I</u>, ECF No. 126.

While it may at first glance seem reasonable for plaintiff to have waited to file a new lawsuit until after exhausting all efforts to revive the first one, careful review of the record does not support that conclusion. First, plaintiff's conduct in <u>Mitchell I</u> demonstrates a pattern of unreasonable delay even *after his mental capacity and access to legal materials were restored*. That is why the case was dismissed, and why the dismissal was upheld on appeal. Plaintiff's attempts to re-open or overturn the judgment, both before and after expiration of the extended limitations period, represent a continuation of the same pattern of litigation conduct.

In <u>Fink</u> itself, the Ninth Circuit found that a prisoner did not act reasonably within the

meaning of California's equitable tolling doctrine by attempting to add new claims to a previously-filed lawsuit rather than timely filing a separate lawsuit. <u>Fink</u>, 192 F.3d at 916. In the present case the claims were the same as in plaintiff's previously-filed lawsuit, but the futility of plaintiff's actions in light of the procedural posture of the case is equivalent to that in <u>Fink</u>. In <u>Bacon v. City of Los Angeles</u>, the Ninth Circuit found that plaintiff's pattern of excessive delay in a prior state court action was unreasonable and defeated equitable tolling for the subsequently-filed federal action. <u>Bacon</u>, 843 F.2d at 375. Plaintiff's "stringing out" of <u>Mitchell I</u>, like the conduct of the <u>Bacon</u> plaintiff (<u>id.</u>), is inconsistent with the "'reasonable and good faith' effort to pursue [plaintiff's] claims in an alternate forum or case" that <u>Fink</u> requires. <u>Fink</u>, 192 F.3d at 916. Accordingly, as in <u>Bacon</u>, plaintiff's history of excessive litigation delay in his preceding case defeats his bid for equitable tolling.

In sum, plaintiff has not established by competent evidence that his mental illness or any other factor beyond his control prevented filing of the instant case between September 18, 2013 and May 5, 2015. Nor has he demonstrated the reasonable efforts necessary to support tolling under <u>Fink</u> and <u>Bacon</u> during that period. Accordingly, the initial 670-day period of equitable tolling that the court finds appropriate does not save the complaint from untimeliness.

VI.    <u>Conclusion</u>

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

Defendants' motion to dismiss (ECF No. 15), reconsidered on remand pursuant to order of the Ninth Circuit Court of Appeals (ECF No. 43), be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that

////

////

////

23

failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 28, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE